IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| ALEXA R. NEMETH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. |
| v. | ) | |
| | ) | 3:19-cv-00715-JTA |
| AUBURN UNIVERSITY, | ) | |
| | ) | |
| Defendant. | ) | |

## ANSWER TO FIRST AMENDED COMPLAINT

Defendant Auburn University ("Defendant" or "Auburn") answers the Plaintiff's Complaint as follows:

## STATEMENT OF THE CASE

1.     This lawsuit is brought by Plaintiff, Alexa R. Nemeth, who has been affected by the claims alleged below and is seeking permanent relief from systemic sexual discrimination and retaliation. The actions of the Defendant alleged in this suit constitute retaliation in violation of Title IX, 20 U.S.C. § 1681 *et seq.*

**ANSWER: Admitted that the lawsuit is brought by the named Plaintiff Alexa R. Nemeth. The remaining allegations are denied.**

## PARTIES

2.     Plaintiff, Alexa R. Nemeth, is a 21-year-old female who now resides and is domiciled in Raleigh, North Carolina. Nemeth was an invited walk-on member of the softball team at Auburn University from 2016-2017.

**ANSWER:     Admitted that Nemeth is over the age of 19 and that she was a walk-on member of the Auburn softball during the 2016-2017 season. Auburn is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of this paragraph.**

3.     Defendant, Auburn University, is a public university incorporated under the laws

of Alabama, Ala. Code § 16-48-1 *et seq*. Auburn University's principal place of business is in Lee County, Alabama.

**ANSWER: Auburn admits it is a public corporation created by the Constitution and laws of Alabama, that it is a public university, and that its principal place of business is in Lee County, Alabama.**

## JURISDICTION AND VENUE

4.      Because it does not declare a limitation period itself, Title IX borrows the most analogous state law statute of limitations. *See Goodman v. Lukens Steel Co.*, 482 U.S. 656, 660 (1987). In Alabama, the most analogous law is the general personal injury statute of limitations, which is two years. *Lufkin v. McCallum*, 956 F.2d 1104, 1105 & n.2 (11th Cir. 1992). Nemeth filed her internal discrimination complaint with Auburn University's Title IX office in May 2017 and received her Notice of Final Outcome on December 15, 2017. In retaliation for participating in the investigation of her Title XI complaint, on September 26, 2017, Nemeth was denied a spot on Auburn's softball team. Nemeth's original complaint was filed on September 25, 2019 (Doc. 1). Therefore, said Complaint was timely.

**ANSWER:    Auburn admits that Nemeth submitted a complaint dated May 31, 2017 to Auburn's Office of Affirmative Action/Equal Employment Opportunity ("AA/EEO"), which was investigated by the Director, AA/EEO & Title IX Coordinator. Admitted that the Notice of Final Outcome document is dated December 15, 2017. The remaining factual allegations of this paragraph are denied. To the extent this paragraph asserts legal conclusions, no answer is required; to the extent an answer is necessary, the remaining allegations are denied.**

5.      The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331.

**ANSWER:    Admitted.**

6.      Pursuant to Federal Rule of Civil Procedure 4, the Court has personal jurisdiction over the Defendant, as Auburn University is located in this District.

**ANSWER:    Admitted.**

8031069.9

7.      Pursuant to 28 U.S.C. § 1391, venue is proper because Defendant is located in this

district, and a substantial part of the events or omissions giving rise to the claims occurred in this

District.

**ANSWER:   Admitted that venue is proper. The remaining allegations of this paragraph are denied.**

## STATEMENT OF FACTS

8.      Plaintiff, Alexa R. Nemeth, is a 21-year-old female. She lived in Auburn, Alabama,

and enrolled as a student at Defendant, Auburn University ("Auburn"), in 2016.

**ANSWER: Admitted that Nemeth is over the age of 19 and that she enrolled as a student at Auburn in 2016. Admitted, based on information and belief, that Nemeth resided in Auburn, Alabama for a period of time.**

9.      Nemeth chose to attend Auburn for its physics department, and she also aspired to

join the softball team. She finalized her plans to attend Auburn and stopped pursuing other schools

after Corey Myers' invitation to pitch.

**ANSWER:   Admitted that Nemeth was a walk-on member of the Auburn softball team during the 2016-2017 season. Auburn is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of this paragraph.**

10.     Clint Myers ("Coach Myers") was head coach of the softball team at Auburn from

2013-2017.

**ANSWER:   Admitted that Clint Myers served as head coach for the Auburn softball team from 2013 to August 2017.**

11.     Corey Myers ("Corey") is Coach Myers' son and was the assistant head coach of

the softball team at Auburn from 2013-2017.

**ANSWER:   Admitted that Corey Myers was an assistant or associate head coach for the Auburn softball team from 2013 to March 2017.**

12.     Nemeth had attended several camps with Coach Myers when she was in high

school. She embraced his philosophy of "excellence in everything" and worked hard at everything

Clint and Corey Myers espoused in order to make the Auburn University team.

**ANSWER: Admitted that prior to coming to Auburn as a student, Nemeth attended softball camps operated, in part, by Coach Myers. Auburn is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of this paragraph.**

13.     On July 16, 2016, Corey called to invite Nemeth to join the team as a pitcher. He told Nemeth she would be the left handed pitching option and that her pitching at a speed of 50-60 mph was good.

**ANSWER:   Admitted that Nemeth was invited to join the Auburn softball team as a walk-on pitcher for the 2016-2017 season. Auburn is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of this paragraph.**

14.     When Nemeth arrived on campus and began softball practice, Corey adjusted her pitching motion and told her he did not want her to throw over 57 MPH; instead, he wanted her to focus on consistently hitting her spots.

**ANSWER:   Auburn is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph.**

15.     Throughout the fall, Corey reiterated to Nemeth several times that he viewed her as a closer, something she had been successful at in high school.

**ANSWER:   Auburn is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph.**

16.     When the team used Nemeth as a closer during the fall, she was extremely effective.

**ANSWER:   Denied.**

17.     During the fall of 2016, Corey took an unexplained leave of absence for one week.

**ANSWER:   Admitted that Corey Myers took a leave of absence in September 2016. The remaining allegations of this paragraph are denied.**

18.     During Corey's leave of absence, Coach Myers worked with the pitchers. Coach Myers spent an entire practice telling Nemeth how much she "sucked" compared to another pitcher and how well the other pitcher was doing in comparison. He did not offer coaching or instruction

8031069.9

as to how Nemeth could improve.

**ANSWER:     Auburn is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph.**

19.     Nevertheless, during a meeting with all of the coaching staff after the fall season, Coach Myers stated that they were all very satisfied with her progress. Corey said that if she got outs in the spring, she would have pitching time. At that meeting, Nemeth also asked for the chance to hit.

**ANSWER:     Auburn is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph.**

20.     After the fall season, Corey again changed Nemeth's pitching motion to throw across her body to be more deceptive.

**ANSWER:     Auburn is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph.**

21.     Nemeth worked through the winter break on mastering her new throwing motion and also on her batting. Coach Myers witnessed her practicing when he visited the field during the break.

**ANSWER:     Auburn is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph.**

22.     During the December 26, 2016, holiday break camp, Coach Myers and Corey told Nemeth that she needed to get rid of her two-toned hair (dyed orange and navy) and that she would never pitch for them with her hair two colors. Orange and blue, of course, are Auburn's colors.

**ANSWER:     Admitted that orange and blue are colors formally associated with Auburn. Auburn is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of this paragraph.**

23.     In the spring of 2017, during preseason practices, Nemeth was praised for her hard work but was not given much practice time.

**ANSWER:     Auburn is without knowledge or information sufficient to form a belief as to**

8031069.9

**the truth of the allegations of this paragraph.**

24. Nemeth inquired about her lack of practice time, but Corey continually put off giving her an explanation, despite Coach Myers' stated philosophy that players would get a direct answer and know where they stood.

**ANSWER:   Auburn is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph.**

25. Eventually in March, after repeated inquiries, Coach Myers told Nemeth that she did not pitch fast enough. This assessment was directly contrary to Corey's coaching her back in the fall to pitch slower.

**ANSWER:   Auburn is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph.**

26. Nevertheless, Nemeth immediately began working to get her pitches up to 63 MPH, which is what Coach Myers told her she needed.

**ANSWER:   Auburn is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph.**

27. She also asked Coach Myers why she wasn't being given a chance to hit, when the team was struggling at the plate. He told her that he wasn't aware she wanted to, or could, hit.

**ANSWER:   Auburn is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph.**

28. Coach Myers, however, had seen her practicing her hitting during winter break, Nemeth had told the coaching staff in the fall meeting that she wanted to bat, and assistant coach Scott Woodward had told her during camps that her "bat would get her on the team."

**ANSWER:   Auburn is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph.**

29. After spring break, the coaches had Nemeth practicing both batting and outfield. The coaches praised her hard work during a team meeting. They also chose her as the only

freshman on the team to go to the Florida series.

**ANSWER:    Admitted that Nemeth was the only freshman to travel for this series. Auburn is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of this paragraph.**

30.    Because it had been several months since Nemeth batted or played outfield, she had

to work intensely before the Florida series to get back to a Division I playing level.

**ANSWER:    Auburn is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph.**

31.    During that same time, Nemeth was preparing for a pivotal physics exam. The

uncertainty and emotional rollercoaster she was experiencing at the hands of the softball coaches

negatively affected her academic performance.

**ANSWER:    Auburn is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph regarding Nemeth's preparation for an examination. The remaining allegations of this paragraph are denied.**

32.    Shortly thereafter, the team was preparing to travel for the Georgia series. Abruptly,

Corey resigned as associate head coach on March 30, 2017.

**ANSWER:    Admitted that Corey Myers resigned as associate head softball coach effective March 30, 2017, at or about the time the softball team was preparing to travel to Athens, Georgia.**

33.    As the team was loading the bus, the seniors refused to board if a certain player got

on the bus. That player was engaging in a personal relationship with Corey, in violation of Auburn

and NCAA policy.

**ANSWER:    Admitted that certain members of the softball team said they would not board the bus if a certain team member was included, and further admitted that certain team members alleged that Corey Myers was engaging in an improper personal relationship with a certain team member; otherwise denied, including specifically any NCAA violations.**

34.    Some of the student-athletes had photographs of text messages between Corey and

this player, demonstrating the inappropriate, sexual nature of their relationship.

**ANSWER:    Admitted that some softball student athletes had accessed a teammate's cell**

phone without permission and thereafter stated that they had screenshots of text messages revealing an improper personal relationship between the teammate and Corey Myers; otherwise denied.

35.     During a March 30 meeting with Meredith Jenkins, the senior women's administrator of Auburn athletics, Jenkins told the team they were risking arrest for taking text messages from their teammate's phone. She ordered that they be deleted.

**ANSWER:    Admitted that on or about March 30, 2017, Meredith Jenkins met with softball team members and that, out of a desire to protect the affected student athlete and out of concern that other team members could be subject to adverse institutional or legal ramifications, Jenkins urged the team members to not disseminate the text messages that some members of the team had obtained without permission; otherwise denied.**

36.     The relationship between Corey and the player had been going on since the fall. Corey's leave of absence in the fall was, on information and belief, because of this illicit relationship.

**ANSWER:    Admitted that Corey Myers' leave of absence in fall 2016 related to certain information that had been provided to Auburn officials regarding alleged improper conduct by Myers relative to a student athlete; otherwise, Auburn is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph.**

37.     On information and belief, Coach Myers and other staff knew about Corey's inappropriate sexual behavior at least by the fall of 2016, when Corey took his unexplained leave of absence.

**ANSWER:    Auburn is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph.**

38.     Then-Athletics Director Jay Jacobs eventually admitted to the press that Auburn athletics first received notification of Corey's wrongdoing during the fall of 2016 (though he initially denied that Corey had ever been the subject of an investigation). The Title IX office of Auburn University found that Corey had engaged in inappropriate relationships with more than one athlete over an extended period of time, and he was removed from the coaching staff on March 30, 2017.

**ANSWER:    Admitted that allegations of improper conduct by Corey Myers were received and evaluated in fall of 2016; admitted that ultimately the AA/EEO office found that Corey had violated the Intimate Relations policy prohibiting pursuing or engaging in romantic or sexual relationships with student(s) whom he supervised or taught; and admitted that Corey was removed via resignation from the coaching staff on March 30, 2017.**

39.    Nevertheless, Corey continued to be present during and around softball practices.

**ANSWER:    Admitted that Corey had some intermittent and unofficial presence in or around softball practices following his resignation.**

40.    Auburn's Title IX coordinator, Kelley Taylor, wrote Corey a letter on August 21, 2017, banning him from the campus property, from university events, and from all softball-related activities or events, whether on or off campus.

**ANSWER:    Admitted that Kelley Taylor, Director, AA/EEO & Title IX Coordinator, wrote a letter dated August 21, 2017 to Corey banning him from campus and forbidding him from attending any Auburn softball activities or events whether on- or off-campus.**

41.    Coach Myers knowingly let his son Corey have relations and pursue relationships with multiple members of the team.

**ANSWER:    Auburn is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph.**

42.    Corey groomed team members so he could pursue inappropriate relationships with them.

**ANSWER:    Auburn admits that its internal investigation concluded that Corey Myers violated the Intimate Relations policy prohibiting pursuing or engaging in romantic or sexual relationships with student(s) whom he supervised or taught. Auburn is otherwise without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph.**

43.    Nemeth believes that Corey's individualized coaching attention regarding her pitching style, his praise of her pitching as a closer (though Coach Myers stopped using her as a pitcher), and other behavior were done in an effort to groom her for his other, more nefarious, purposes.

**ANSWER:    Auburn is without knowledge or information sufficient to form a belief as to**

8031069.9

the truth of the allegations of this paragraph.

44.     In addition to having an inappropriate relationship with team members, Corey made players uncomfortable with his overt commentary regarding their looks. For example, after team pictures were taken in September 2015, Corey sent the following text message to team member Blaire Bass: "Your [sic] okay 7 maybe." In another message he wrote, "Thinking about you and know we give you a lot of s--but we are all so glad you are here!" Bass was not invited back to the team at the conclusion of the 2016 season.

**ANSWER:     Auburn admits that its internal investigation concluded that Corey Myers violated the Intimate Relations policy prohibiting pursuing or engaging in romantic or sexual relationships with student(s) whom he supervised or taught. Auburn is otherwise without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph.**

45.     During the Myers' tenure with the Auburn softball team, a player's looks determined whether she was liked or not.

**ANSWER:     Auburn is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph.**

46.     Another player, Haley Fagan (shortstop 2014-2017), went after a ground ball during practice drills during her first year at Auburn. Corey smacked her on the backside. She told him not to do that. When she spoke to Coach Myers and assistant coach Scott Woodard about Corey's behavior, their reaction was to say, "Define inappropriate relationship."

**ANSWER:     Auburn is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph.**

47.     The culture of manipulation and exploitation was toxic and lacked institutional control. After several members of the team filed anonymous ethical complaints with the Athletics Department in September 2016, Auburn conducted an internal investigation that led to Corey's short-lived resignation. During that time, Coach Myers asked select members of the team to fight for Corey -- his son -- with the Athletics Department. One team member who did so ended up

feeling like an idiot for defending Corey after his inappropriate relationship with a teammate was

revealed in the spring.

**ANSWER:    Admitted that Auburn conducted an internal investigation into complaints it received regarding Corey Myers. Auburn denies that "[t]he culture of manipulation and exploitation was toxic and lacked institutional control." Auburn is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of this paragraph.**

48.    Nemeth and other teammates felt pressured to engage in inappropriate and/or sexual

relationships with Corey to receive better treatment in practice and at games.

**ANSWER:    Auburn is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph.**

49.    Whitney Jordan, who left the team after the 2017 season with one year of eligibility

left, said, "No one on the outside has a clue to what we went through."

**ANSWER:    Auburn is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph.**

50.    Auburn, the Athletics Department, and the coaching staff did everything to protect

Corey. No one protected the athletes.

**ANSWER:    Denied.**

51.    On May 29, 2017, Nemeth's father, Alan Demaske, emailed then-Auburn President

Jay Gogue, Athletics Director Jay Jacobs, and Title IX coordinator Kelley Taylor. His email outlined

Corey's improper relations with students, the coaching staff and the administration's knowledge

of Corey's inappropriate behavior, the mental harassment of players, and what was perceived as

the grooming of his daughter. He asked what Auburn was doing about these matters.

**ANSWER:    Admitted that Alan Demaske emailed then-Auburn President Jay Gogue, Athletics Director Jay Jacobs, and Kelley Taylor, Director, AA/EEO & Title IX Coordinator, on May 29, 2017; and further admitted that the email contained allegations generally consistent with the averments of this paragraph; otherwise denied.**

52.    On May 29, 2017, Nemeth had her end of the year meeting with the softball

8031069.9

coaching staff. During that meeting Coach Myers told Nemeth that he did not see a role for her on

the softball team the following season.

**ANSWER:    Admitted that at the end of the season meeting on May 29, 2017, Nemeth was offered a position as a team manager for the next season, but was advised that there would be no role for her as a player.**

53.    On May 31, 2017, Nemeth and her family met with Dr. Gogue and Bernard Hill,

the Senior Associate Athletics Director - Compliance. During that meeting, Nemeth informed Hill

and Dr. Gogue about Corey's inappropriate relationships and commentary to Nemeth and her

teammates, the hostile environment the Myers' created for the team, and the retaliation (in the

form of less play/practice time and removal from the team) for speaking up.

**ANSWER:    Admitted that Nemeth and members of her family met with Dr. Gogue and Bernard Hill on May 31, 2017 to voice certain complaints, including alleged retaliation, generally consistent with the averments of this paragraph.**

54.    Nemeth filed a complaint with Auburn's Title IX department on May 31, 2017,

alleging Title IX and NCAA violations, including that Coach Myers knowingly allowed his son

Corey to have and pursue inappropriate relationships with members of the team, that she had been

subjected to abuse and harassment, and that the administration was engaging in a cover-up.

**ANSWER:    Admitted that Nemeth submitted a complaint to Auburn's AA/EEO office dated May 31, 2017, that included allegations generally consistent with the averments of this paragraph.**

55.    Nemeth retained an attorney, Martin J. Greenberg, to assist with her claims.

Beginning on July 20, 2017, and continuing throughout the summer and fall, Greenberg exchanged

numerous letters with Auburn's General Counsel, Lee Armstrong. Greenberg's letters detailed the

nature of Nemeth's allegations, the Title IX violations, and the NCAA violations.

**ANSWER:    Admitted that Martin J. Greenberg, an attorney representing Nemeth, corresponded with Auburn's General Counsel beginning on July 20, 2017, and continuing thereafter for several months, making various allegations and complaints of violations, including allegations of retaliation against Nemeth.**

8031069.9

56.     In July 2017, all of the foregoing notwithstanding, Auburn, Jay Jacobs, and Meredith Jenkins signed Coach Myers to a three-year extension of his contract (through 2023).

**ANSWER:     Denied.**

57.     On July 5, 2017, Nemeth's father emailed the new Auburn President, Dr. Steven Leath, to make him aware of his daughter's Title IX complaint and the investigation. He also forwarded the emails, which went into further detail, that he had exchanged with Dr. Gogue and Bernard Hill. Throughout July, Nemeth's father and Dr. Leath exchanged several emails, some of which copied Kelley Taylor and Jay Jacobs.

**ANSWER:     Admitted that Nemeth's father sent then-Auburn President Dr. Steven Leath an email on July 5, 2017, and that he forwarded or sent Dr. Leath other emails as alleged.**

58.     On August 7, 2017, Nemeth and her family met with Auburn Board member Bob Dumas. During that meeting, Nemeth informed Dumas that Corey had given her special coaching attention, but that when he resigned her play/practice time was virtually eliminated. Nemeth further informed Dumas that the coaches encouraged bullying and hazing, intimidated players to break student conduct codes, engaged in inappropriate nepotism, and engaged in sexual harassment and inappropriate contact with the students. They also discussed how when Coach Myers was at Arizona State before being hired by Auburn, on information and belief, he had an Assistant Coach (Robert Wagner) who engaged in an affair with a player, which Coach Myers let slide. (Wagner is now married to that former player.) Nemeth also gave Dumas a copy of the July 20 letter from Greenberg to Armstrong, detailing the background and alleged violations.

**ANSWER:     Admitted that Nemeth and some of her family members met on or about August 7, 2017 with Auburn Board of Trustees member Bob Dumas and that the Nemeth group imparted essentially the allegations and information alleged in this paragraph, including the July 20, 2019, Greenberg letter; otherwise denied.**

59.     On August 18, 2017, Nemeth's father emailed Gaines Lanier, who is on the Board of Trustees and the Lead Trustee for Athletics, and detailed Nemeth's experiences and the

8031069.9

investigation. Lanier responded by saying that he was forwarding the information to the appropriate authorities at Auburn.

**ANSWER:   Admitted that Nemeth's father emailed on or about August 18, 2018 with Auburn Board of Trustees member Gaines Lanier and therein imparted essentially the allegations and information alleged in this paragraph.**

60.   On August 23, 2017, Coach Myers resigned, citing a desire to spend time with his family.

**ANSWER:   Admitted that on August 23, 2017, Coach Myers resigned as head softball coach.**

61.   On September 26, 2017, Nemeth attended softball tryouts with new head coach Mickey Dean. Dean did not select Nemeth for the team, notwithstanding that the Auburn Softball Website in July of 2017 had listed Nemeth on the roster, and also listed her as Academic All-SEC for 2017.

**ANSWER:   Admitted that Nemeth was on the softball team and roster for the 2016-2017 season and that, following tryouts on September 26, 2017, Nemeth was not selected for the 2017-2018 Auburn softball team by new head coach Mickey Dean. The remaining allegations of this paragraph are denied.**

62.   On September 29, 2017, Nemeth's father contacted the U.S. Department of Education's Office of Civil Rights ("OCR"). He filed an OCR complaint and informed the office that his daughter's Title IX complaint with Auburn was 120 days old at that point with no ruling. The OCR complaint alleged discrimination based upon sex, retaliation that was continuing without remedy, and delay of the investigation by Auburn.

**ANSWER:   Admitted that Nemeth's father filed an OCR complaint that the Department of Education stated it received on October 1, 2017, and that the complaint included allegations generally consistent with the averments of this paragraph. The remaining allegations of this paragraph are denied.**

63.   At some point during Auburn's investigation of Nemeth's claim, Auburn retained an outside law firm, Lightfoot Franklin and White, LLC, of Birmingham, to assist with the

8031069.9

investigation.

**ANSWER:   Admitted that Lightfoot Franklin and White was engaged to provide supplemental support to Auburn's AA/EEO office beginning in July 2017 in connection with that office's overall softball investigation; otherwise denied.**

64.    On October 25, 2017, the Title IX department wrote Nemeth a letter stating that there was sufficient evidence to support a finding that unwanted sexual conduct by Corey occurred with other members of the team, but not enough evidence that Corey created a hostile environment for Nemeth. In other words, the investigation concluded "non-responsibility" for Corey Myers.

**ANSWER:   Admitted that Auburn provided Nemeth with an October 25, 2017 Final Investigation Report with a Notice of Non-Responsibility and Notice of Outcome providing, among other things, that there was "insufficient evidence, by a preponderance of the evidence, to support a finding" that Corey Myers' conduct "constituted *quid pro quo* harassment or created a hostile environment" as to Nemeth.**

65.    On November 6, 2017, Nemeth appealed that outcome, citing procedural errors and substantial new evidence that would materially impact the outcome.

**ANSWER:   Admitted that Nemeth submitted an appeal dated November 6, 2017, and that the appeal generally addressed the matters averred in this paragraph.**

66.    On December 15, 2017, Auburn denied her appeal in a Notice of Final Outcome.

**ANSWER:   Admitted that the Notice of Final Outcome denying a basis for appeal is dated December 15, 2017.**

67.    In the fall of 2017, Nemeth started having severe hip and lower back pain. She saw an orthopedic physician and began physical therapy to address those problems. The physical therapist found Nemeth's hips were unbalanced. After treatments, Nemeth no longer has any pain. Dr. Gretchen Oliver, a kinesiology professor who studies pitching motions, informed Nemeth that the new pitching method Corey had her working on was stressing her body. Practicing to master Corey's new pitching style contributed to Nemeth's hip and low back pain.

**ANSWER:   Auburn is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph.**

**COUNT ONE:**
**Title IX Retaliation Against Auburn**

68.     Plaintiff adopts and realleges each and every allegation contained in this Complaint

as if set out anew herein.

**ANSWER:   Auburn objects to Nemeth's attempt to adopt and incorporate every allegation. Nevertheless, to the extent she has done so, Auburn adopts and incorporates here every preceding response to the Amended Complaint's allegations.**

69.     Auburn had knowledge that Plaintiff engaged in protected activity, including

notifying the administration about Title IX violations, filing a Title IX complaint, and participating

in the investigation.

**ANSWER:   Auburn admits that Nemeth filed a complaint with its AA/EEO office and that she participated in the investigation of that complaint; otherwise, denied.**

70.     On May 29, 2017, Plaintiff's father emailed then-President Dr. Gogue, Jay Jacobs,

and Kelley Taylor to report the harassment to which his daughter had been subjected, the sexual

harassment she and the team experienced, and the inappropriate sexual relationships between

Corey Myers and students.

**ANSWER:   Auburn admits that Nemeth's father sent an email on May 29, 2017 to then-President Dr. Gogue, Jay Jacobs and Kelley Taylor, and that the email, which speaks for itself, included allegations generally consistent with the averments of this paragraph.**

71.     That same day, Plaintiff was released from the softball team.

**ANSWER:   Admitted that at the end of the season meeting on May 29, 2017, Nemeth was offered a position as a team manager for the next season, but was advised that there would be no role for her as a player.**

72.     On May 31, 2017, Plaintiff filed a Title IX complaint, based upon sexual

harassment, with Auburn. To the extent there was an investigation into her complaint, Plaintiff

participated.

**ANSWER:   Auburn admits that Nemeth submitted a complaint to its AA/EEO office dated May 31, 2017 and that she participated in the office's investigation of that complaint; otherwise, denied.**

73.     In the fall, after Coach Myers resigned, Plaintiff tried out for the softball team again. She was not asked to join the team.

**ANSWER:    Admitted that Coach Myers resigned August 23, 2017. Admitted that Nemeth did not make the 2017-2018 softball team following tryouts in September 2017.**

74.     Plaintiff and her teammates had all endured the harassment, but Plaintiff is the one who spoke up about it, filed a Title IX complaint, and continued to follow up with Auburn administration throughout the many delays in the investigation process. Plaintiff was the squeaky wheel.

**ANSWER:    Auburn admits that Nemeth submitted a complaint to its AA/EEO office dated May 31, 2017 and that she participated in the office's investigation that complaint. The remaining allegations of this paragraph are denied.**

75.     She was dismissed from the softball team, and then, on September 26, 2017, was not invited back after fall tryouts, because of her participation in the Title IX complaint, the investigation, and her speaking with the media about the situation.

**ANSWER:    Admitted that at the end of the season meeting on May 29, 2017, Nemeth was offered a position as a team manager for the next season, but was advised that there would be no role for her as a player. Auburn further admits that Nemeth did not make the 2017-2018 softball team following tryouts, and was so informed on September 26, 2017. The remaining allegations of this paragraph are denied.**

76.     Ultimately, the environment became so hostile—between the harassment she experienced on the team and the delays and ultimately unfavorable finding of the Title IX office—that Plaintiff transferred to a different university where she could study and play softball in peace. That school, while a fine institution of higher learning, is not on the same level athletically as an SEC school.

**ANSWER:    Auburn admits that Nemeth transferred to a different institution; otherwise denied.**

77.     WHEREFORE, PREMISES CONSIDERED, Plaintiff demands the following relief:

8031069.9

      a.        Placement on the Auburn softball team;

      b.        Damages for loss of player benefits, mental anguish, embarrassment, and emotional distress;

      c.        Injunctive relief;

      d.        Pre-judgment interest;

      e.        Attorneys' fees;

      f.        Costs; and

      g.        Such other legal or equitable relief to which Plaintiff may be entitled.

**ANSWER:   Auburn denies that Nemeth is entitled to any of the relief requested in the Amended Complaint.**

## ADDITIONAL DEFENSES

### First Defense

Except as specifically admitted herein, Auburn denies each and every allegation of the Amended Complaint and demands strict proof thereof, denies that it violated any law related to Plaintiff, denies that it is liable to Plaintiff in any respect, denies that Plaintiff was subjected to retaliation, or has suffered any damages, and denies that Plaintiff is entitled to any of the relief requested in the Amended Complaint.

### Second Defense

Some or all of Plaintiff's claims are barred by the applicable statute of limitations.

### Third Defense

Plaintiff's protected activity is not causally related to the alleged adverse action she claims and she cannot establish but-for causation or motivating factor causation.

### Fourth Defense

Plaintiff's claims are barred in whole or in part by the failure to mitigate damages that she

8031069.9

claims to have suffered.

### Fifth Defense

All of the challenged decisions and actions of Auburn were taken for legitimate, non-retaliatory, non-pretextual, reasons. In the alternative, and denying that this is a mixed motive case, Auburn's decisions and actions challenged as retaliatory would have been undertaken even had Plaintiff not had the protected status she alleges and regardless of any allegedly retaliatory motive.

### Sixth Defense

The equitable or declaratory relief sought by Plaintiff is barred by the doctrines of waiver, laches, estoppel, after-acquired evidence, and/or unclean hands.

### Seventh Defense

Auburn's decisions and actions towards Plaintiff were made in good faith and without retaliatory intent. Any allegedly retaliatory actions or decisions by Auburn's agents or its employees were contrary to Auburn's good faith efforts to comply with the law.

### Eighth Defense

Some or all of the causes of action in the Amended Complaint fail to state a claim upon which relief can be granted and some of the relief she requests cannot be granted.

### Ninth Defense

Plaintiff's claims are barred, in whole or in part, because Auburn did not act knowingly, intentionally or with malice or reckless indifference, and Auburn did not willfully violate any law, statute, or right of plaintiff.

### Tenth Defense

Auburn reserves the right to amend this answer to include additional factual and legal defenses that are uncovered during the course of this litigation.

8031069.9

Respectfully submitted this the 18th day of December, 2019.

/s/ Kelly F. Pate
One of the Attorneys for Defendant
Auburn University

**OF COUNSEL:**

David R. Boyd (ASB-0727-D52D)
Email: dboyd@balch.com
Kelly F. Pate (ASB-5289-L63F)
Email: kpate@balch.com
Balch & Bingham LLP
Post Office Box 78
Montgomery, AL 36101
Telephone: (334) 834-6500

Jaime S. Hammer (ASB-1557-C00Z)
Email: jhammer@auburn.edu
Morgan M. Sport (ASB-3230-M71S)
Email: mms0116@auburn.edu
Auburn University
Office of General Counsel
101 Samford Hall
Auburn, AL 36849
Telephone: (334) 844-5176

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system and service will be perfected upon any CM/ECF participants electronically and that I have mailed by United States Postal Service a copy of the foregoing document to any non-CM/ECF participants this the 18th day of December, 2019:

John D. Saxon
2119 3rd Avenue North
Birmingham, AL 35203-3368
jsaxon@saxonattorneys.com

/s/ Kelly F. Pate
OF COUNSEL

8031069.9