IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| ALEXA R. NEMETH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIVIL ACTION NO. |
| v. ) | |
| ) | 3:19-cv-00715-JTA |
| AUBURN UNIVERSITY, ) | |
| ) | |
| Defendant. ) | |

**MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS**

Pursuant to Fed. R. Civ. P. 12(c), Defendant Auburn University moves to dismiss one of the two retaliation claims asserted against it in the First Amended Complaint (Doc. 27) ("amended complaint"), as explained more fully below.

**I.      Introduction**

Plaintiff Alexa R. Nemeth, a former Auburn student and non-scholarship ("walk-on") member of the softball team, asserts two Title IX retaliation claims against Auburn.[1] First, Nemeth alleges that in retaliation for her having raised certain contentions of sex-based discrimination, harassment, and hostile environment in Auburn's softball program, she was removed on May 29,

---

[1] On September 25, 2019, Nemeth filed her original complaint (Doc. 1) against Auburn, former Auburn softball coaches Clinton Myers and Corey Myers, former (and now Interim) President Jay Gogue, and former President Steven Leath. Nemeth alleged "systemic sexual discrimination, harassment, and [a] hostile environment" during her time on the Auburn softball team, and asserted claims for sexual discrimination and retaliation in violation of Title IX, 20 U.S.C. § 1681 *et seq.*, and 42 U.S.C. § 1983. (Doc. 27, ¶ 1). Specifically, Nemeth alleged Title IX sexual discrimination and retaliation claims against Auburn, § 1983 (equal protection) sexual discrimination and harassment claims against all defendants, § 1983 and § 1981 retaliation claims against all defendants, and a § 1983 failure to supervise claim against all defendants. After all defendants filed meritorious motions to dismiss based largely on the statute of limitations, Nemeth filed an amended complaint that dropped all defendants except Auburn and eliminated all claims except the two Title IX retaliation claims. Auburn's motion to dismiss had challenged one of the retaliation claims on timeliness grounds, but not the second one because it was not time-barred. This motion again seeks dismissal on statute of limitations grounds of the first, but not the second, retaliation claim asserted in the amended complaint.

2017 from the softball team ("May retaliation claim"). (Doc. 27, ¶¶ 69-71, 75). Her second claim is that she experienced another episode of Title IX retaliation in September of 2017 when, after a tryout for a walk-on spot on the softball team under a new head coach, she did not make the team ("September retaliation claim"). (Doc. 27, ¶¶ 72-75). The May retaliation claim is barred by the two-year statute of limitations.

## II.     Factual Allegations of the Complaint

The following alleged facts are drawn directly from the amended complaint. As required on a Rule 12(c) motion, "the allegations in the complaint are [accepted as] true (even if doubtful in fact)" for purposes of this motion. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also United States v. Alabama Dep't Mental Health, Mental Retardation*, No. 208-CV-1025-MEF, 2010 WL 447399, at *2 (M.D. Ala. Feb. 9, 2010), *aff'd sub nom. United States v. Alabama Dep't of Mental Health & Mental Retardation*, 673 F.3d 1320 (11th Cir. 2012) ("A motion for judgment on the pleadings under Rule 12(c) is governed by the same standards as a motion to dismiss under Rule 12(b)(6). The main difference between the motions is that a motion for judgment on the pleadings is made after an answer and that answer may also be considered in deciding the motion."). These Defendants do not necessarily concede the truth or accuracy of Nemeth's allegations, and reserve the right at any later stages of this action to dispute them.

### A.     Nemeth's Walk-On Participation

Nemeth was an invited walk-on member of Auburn's softball team during 2016-2017. (Doc. 27, ¶ 2). Clinton Myers was the head coach and his son, Corey, was the associate head coach. (Doc. 27, ¶¶ 10-11). Nemeth was a pitcher. She played some during the fall season of 2016 (Doc. 27, ¶ 16) and, despite some harsh criticism from head coach Myers while he was working with the pitchers for a time when Corey Myers was on a short leave of absence that fall, Nemeth was told

at the end of the fall 2016 season that the coaches were satisfied with her progress. (Doc. 27, ¶¶ 17-19).

During Spring of 2017, Nemeth worked hard at her pitching and also worked to develop her hitting, but experienced "uncertainty" and was on an "emotional rollercoaster" as a result of the coaches' inconsistent statements to her and their treatment of her as a player. Her academic performance was negatively affected. (Doc. 27, ¶¶ 23-31).

While an Auburn coach, Corey Myers "groomed" softball team members so he could pursue inappropriate relationships with them, conduct that Coach Clinton Myers knew about and condoned. (Doc. 27, ¶¶ 41-42). Corey Myers also made inappropriate comments of a sexual nature to team members and had uninvited physical contact with one or more of them. (Doc. 27, ¶¶ 44-46). Clinton Myers failed to intercede even when complaints about Corey Myers' conduct were made. (Doc. 27, ¶ 46). That conduct, allowed by Clinton Myers to continue, created a "[toxic] culture of manipulation and exploitation" in which Nemeth and other team members felt pressured to engage in inappropriate relationships with Corey Myers in order to receive better treatment in practice and games. (Doc. 27, ¶¶ 47-48).

Based on its Title IX Office's finding that Corey Myers had engaged in inappropriate relationships with athletes, Auburn forced Myers to resign his coaching position on March 30, 2017. (Doc. 27, ¶¶ 32, 38). Corey Myers' resignation roughly coincided with a protest by some team members based on their displeasure with his having been involved in an inappropriate personal relationship with a team member, a relationship that had been ongoing since fall 2016. (Doc. 27, ¶¶ 32-36). Head Coach Clinton Myers knew about the relationship by the fall of 2016. (Doc. 27, ¶ 37).

### B.     Nemeth's May 29, 2017 Removal from the Softball Team

On May 29, 2017, Nemeth's father emailed Auburn President Gogue and other Auburn officials outlining Corey Myers' improper relations with students, the coaching staff's and administration's knowledge of Corey's inappropriate behavior, the mental harassment of players by the coaches, and what was perceived as the "grooming" of his daughter to become another one of Corey Myers' relationships. (Doc. 27, ¶ 51). That same day, Nemeth was told by Head Coach Clinton Myers in her year-end meeting with the coaching staff that he saw no role for her on the following season's team. (Doc. 27, ¶ 52). Nemeth considers that she was removed from the team on this date. (Doc. 27, ¶¶ 52-53, 70-71).

Two days later, on May 31, 2017, Nemeth and her family met with President Gogue and an Athletic Department official to reiterate the allegations previously made by email and to accuse Auburn of retaliation. Specifically, Nemeth's father told Dr. Gogue that, in retaliation for speaking up about the coaches' misconduct, Nemeth had received less practice and playing time and had been removed from the team. (Doc. 27, ¶ 53).

That same day, May 31, 2017, Nemeth filed a Title IX complaint with Auburn's Title IX office alleging violations of that federal statute, including Corey Myers' inappropriate relationships with team members that were condoned by Clinton Myers, the infliction by the coaches of abuse and harassment on her personally, and administrative cover-up. (Doc. 27, ¶ 54).

Nemeth also retained an attorney "to assist with her claims." Nemeth's attorney wrote letters that "detailed the nature of Nemeth's allegations" and asserted violations of Title IX. (Doc. 27, ¶ 55). The lawyer's July 20, 2017 letter to Alabama's Governor, Auburn's President, and Auburn's Director of Athletics (Doc. 23, Ex. 2; Doc. 20, Ex. 2; Doc. 25) related Nemeth's

4

grievances against Auburn and its officials in great detail.[2] Among the lawyer's contentions on Nemeth's behalf was that Auburn, through the softball coaching staff, had impermissibly retaliated against Nemeth by removing her in May from the softball team, an action prompted by Nemeth's having previously reported Corey Myers' inappropriate relationship. Ex. 2, p. 7.

Also in July of 2017, Nemeth's father contacted Dr. Steven Leath, Auburn's then-President who had shortly before succeeded President Gogue, to make Leath aware of Nemeth's Title IX complaint. He also forwarded to President Leath the emails previously sent to Dr. Gogue, which provided further detail. (Doc. 27, ¶ 57). In August of 2017, Nemeth and her family met with a member of the Auburn Board of Trustees to reiterate Nemeth's allegations of bullying, hazing, intimidation, and sexual harassment. Nemeth shared with the Board member the July 20, 2017 letter her attorney had sent to the Governor and Auburn officials, which specifically alleged retaliatory removal from the team. (Doc. 27, ¶ 58). Shortly thereafter, Nemeth's father emailed another Trustee, "detail[ing] Nemeth's experiences." (Doc. 27, ¶ 59).

### C. Nemeth's September 26, 2017 Softball Tryout

Head Coach Clinton Myers resigned on August 23, 2017. (Doc. 27, ¶ 60). On September 26, 2017, Nemeth attended softball tryouts with the new head softball coach, but was not selected for the team. (Doc. 27, ¶ 61). Three days later, on September 29, 2017, Nemeth's father contacted the U.S. Department of Education's Office of Civil Rights and filed a complaint alleging sex discrimination, retaliation, and delay in Auburn's internal investigation. (Doc. 27, ¶ 62.)

---

[2] Nemeth's lawyer's letter can be considered on this Rule 12(c) motion for judgment on the pleadings without converting it into a motion for summary judgment. *See* authorities cited *infra* at p. 7. The letter is referenced in the complaint (Doc. 27, ¶ 55); is central to Nemeth's claims in that Nemeth refers to the letter as an example of her having been the team's "squeaky wheel" who "spoke up" about the sexual harassment experienced by the team, the protected activity she alleges led to retaliation against her (*see* Doc. 27, ¶¶ 69-75); and its authenticity cannot be challenged by Nemeth.

5

On October 25, 2017, Auburn's Title IX office advised Nemeth that, although the evidence from its investigation established that Corey Myers had engaged in unwanted sexual conduct with other team members, there was insufficient evidence that Nemeth herself had experienced a hostile environment. Her appeal of that decision was denied on December 15, 2017. (Doc. 27, ¶¶ 64-66).

### III.    Statute of Limitations and Accrual Principles

Because Title IX claims do not have their own limitations periods, they borrow from the most analogous state law statute of limitations. Thus, Nemeth's Title IX retaliation claims are subject to the two-year statute of limitations found in Ala. Code § 6-2-38(*l*) (1975). *Hurt v. Shelby Cnty. Bd. of Educ.*, 198 F. Supp. 3d 1293, 1315 (N.D. Ala. 2016) ("Both Title IX and section 1983 actions filed in this district are governed by Alabama's personal injury statute of limitations, ALA. CODE § 6–2–38(*l*)."); *see also Beasley v. Ala. State Univ.*, 3 F. Supp. 2d 1325, 1331 (M.D. Ala. 1998).

As a general matter, for Title IX claims the limitations period begins to run "the moment the plaintiff knows or has reason to know of the injury that is the basis of [the] complaint." *Helton v. Clements*, 832 F.2d 332, 334-335 (5th Cir. 1987); *see also Beasley*, 3 F. Supp. 2d at 1338 (internal quotations and citations omitted). "Moreover, where the plaintiff alleges unlawful discrimination under federal law, the Eleventh Circuit [] has . . . h[eld] that the cause of action does not accrue until the supporting facts—that is, evidence of discriminatory conduct—are apparent, or would have been apparent to a reasonably prudent person." *Id*; *see also Calhoun v. Ala. Alcoholic Beverage Control Bd.*, 705 F.2d 422, 425 (11th Cir. 1983); *Rozar v. Mullis*, 85 F.3d 556, 562 (11th Cir. 1996).

The affirmative defense of statute of limitations will support a dismissal under Rule 12(c) where it is evident from the plaintiff's pleading when the claim accrued and the limitations period expired. *See, e.g., Davis v. Coca-Cola Bottling Co. Consolidated*, No. 02-0629-CB-M, 2002 WL

6

35649412, at *2 (S.D. Ala. Nov. 15, 2002) ("[J]udgment on the pleadings under Fed. R. Civ. P. 12(c) is uniquely suited to disposing of a case in which a statute of limitations provides an effective bar against a plaintiff's claim.") (quoting *Phelps v. McClellan*, 30 F.3d 658, 663 (6th Cir. 1994)); 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1367 (3d ed. Aug. 2019 update) ("The Rule 12(c) procedure also may be of value when the statute of limitations provides an effective bar against the plaintiff's claim and the entire controversy may be disposed of by a pretrial summary motion based on the parties' pleadings."). On a Rule 12(c) motion, the Court can consider documents that are (i) appended to the motion, (ii) referenced in the complaint, (iii) central to the plaintiff's claim, and (iv) unquestioned as to authenticity, without converting the 12(c) motion into a motion for summary judgment. *See Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002) ("Our Rule 12(b)(6) decisions have adopted the "incorporation by reference" doctrine, under which a document attached to a motion to dismiss may be considered by the court without converting the motion into one for summary judgment only if the attached document is: (1) central to the plaintiff's claim; and (2) undisputed. . . . [W]e believe that the Rule 12(b)(6) incorporation by reference doctrine should apply in Rule 12(c) cases as well.") (internal citations omitted). *See also Fraenkel v. Messerli & Kramer, P.A.*, No. Civ. 04-1072JRTFLN, 2004 WL 1765309, at *3–4 (D. Minn. July 29, 2004) (considering letters not attached to Plaintiff's complaint in granting Rule 12(c) motion where the letters established Plaintiff's claims were barred by the statute of limitations).

**IV.     The May Retaliation Claim is Time-Barred**

It is apparent from the amended complaint that Nemeth was fully aware more than two years before this action was filed of the facts, circumstances, and events that form the basis of her May retaliation claim. Indeed, it is clear that at least as early as May 31, 2017, Nemeth and her supporters were actually alleging retaliation.

7

May 31 was the day Nemeth and her family had a meeting with President Gogue, during which Nemeth's father contended, among other things, that Nemeth's removal from the softball team two days earlier was in retaliation for speaking up about the softball coaches' misconduct. (Doc. 27¶ 53). This allegation was reiterated on July 20, 2017, when Nemeth's lawyer wrote a detailed letter on her behalf to the Alabama Governor and top Auburn administrators, reciting Nemeth's allegations and their factual basis in elaborate detail. The lawyer's contentions included that the softball coaching staff had retaliated against Nemeth by removing her from the team. (Doc. 27, ¶ 55). In August of 2017, Nemeth and her family shared the lawyer's letter with at least one member of the Auburn Board of Trustees. (Doc. 27, ¶¶ 58-59). These events, described in the amended complaint, show conclusively that Nemeth was fully aware during the May-August period of 2017 of the alleged wrongs committed against her, including specifically retaliation in the form of dismissal from the Auburn softball team. There can be no doubt that Nemeth's retaliation claim based on her May 29, 2017 removal from the team accrued before September 25, 2017, making her September 25, 2019 complaint untimely with respect to that claim.

**V.      There is No "Continuing Violations" Theory to Save the May Retaliation Claim**

Nemeth may make a "continuing violations" argument to try to save her May retaliation claim. She might contend that the alleged retaliatory act of removing her from the softball team in May of 2017 and the second alleged retaliatory act of the new coach's not selecting her for the team on September 26, 2017 are closely related, and should be considered as two parts of a single wrong. Therefore, her argument might continue, as long as the September 26, 2017 retaliatory act is within the filing period, the "combined" claim is timely, having been filed on September 25, 2019. Any such argument would be baseless.

The continuing violations doctrine applies only to hostile environment claims, and not to claims, such as retaliation, that are based on discrete acts—even if several of the acts are related

8

to each other. This distinction is made clear in *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110-15 (2002). Rejecting the lower appellate court's application of the continuing violations doctrine to what that court termed discrete "serial violations," the Supreme Court held that:

> Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify. Each incident of discrimination and <u>each retaliatory adverse employment decision</u> constitutes a separate actionable "unlawful employment practice."

*Id.* at 114. In contrast, the Supreme Court observed, the continuing violations doctrine <u>can</u> be applied to hostile environment claims because, by their very nature, such claims involve repeated conduct, and that repeated conduct constitutes the "unlawful employment practice" prohibited by Title VII. *Id.* at 115-121.[3]

It is thus clear that the May retaliation claim and the September retaliation claim are two discrete claims based on separate alleged acts of retaliation. For statute of limitations purposes, the May retaliation claim is time-barred, while the September retaliation claim was filed within the two-year period.

## VI.   Conclusion

Nemeth's May retaliation claim should be dismissed with prejudice as untimely, and this action should thereafter be limited to the September retaliation claim.

---

[3] It appears to remain unsettled whether the continuing violations doctrine applies at all to Title IX claims. But even if the doctrine could be transported from the Title VII jurisprudence, where it developed, to the Title IX context, it would not be applicable to discrete retaliatory acts. *See*, *e.g.*, *Brown v. Castleton State College*, 663 F. Supp. 2d 392, 400 (D. Vermont 2009) (assuming continuing violations theory could apply to a Title IX hostile environment claim, but finding the theory inapplicable on the facts); *Dibbern v. Univ. of Michigan*, No. 12-15632, 2016 WL 2894491, at *19 (E.D. Mich. May 18, 2016) (rejecting application of continuing violations doctrine to Title IX claims generally); *Yan Yan v. Pennsylvania State Univ.*, No. 4:14-cv-01373, 2015 WL 3953205, at *13 (M.D. Pa. June 29, 2015), *aff'd,* 623 F.App'x 581 (3rd Cir. 2015) (even presuming that continuing violations doctrine would apply to Title IX claim, doctrine would not save discrete acts of discrimination or retaliation).

8152073.14

Respectfully submitted this the 30th day of January, 2020.

                                                  /s/Kelly F. Pate_____
                                                  One of the Attorneys for Defendant
                                                  Auburn University

**OF COUNSEL:**

David R. Boyd (ASB-0727-D52D)
Email: dboyd@balch.com
Kelly F. Pate (ASB-5289-L63F)
Email: kpate@balch.com
Balch & Bingham LLP
Post Office Box 78
Montgomery, AL 36101
Telephone: (334) 834-6500
Facsimile: (334) 269-3115

Jaime S. Hammer (ASB-1557-C00Z)
Email: jhammer@auburn.edu
M. Maran White (ASB-8691-I64W)
Email: mmw0012@auburn.edu
Auburn University
Office of General Counsel
101 Samford Hall
Auburn, AL  36849
Telephone: (334) 844-5176

## CERTIFICATE OF SERVICE

      I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system and service will be perfected upon any CM/ECF participants electronically and that I have mailed by United States Postal Service a copy of the foregoing document to any non-CM/ECF participants this the 30th day of January, 2020:

John D. Saxon
2119 3rd Avenue North
Birmingham, AL 35203-3368
jsaxon@saxonattorneys.com

*Counsel for Plaintiff*

                                                /s/Kelly F. Pate_____
                                                OF COUNSEL

8152073.14